UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANIKET SARNA (A 221-417-225),<br>Petitioner,<br>v.<br>CHESTNUT,<br>Respondent. | No. 1:26-cv-04535-DC-SCR<br><br>FINDINGS & RECOMMENDATIONS |

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. This matter is referred to the undersigned by operation of Local Rule 302 and 28 U.S.C. § 636(b)(1). This is Petitioner's fourth habeas corpus petition, but the first before this district. For the foregoing reasons, the undersigned finds that Petitioner's ongoing detention violates substantive due process and recommends that he be released.

## I. Factual and Procedural History

On May 13, 2025, Petitioner arrived at a U.S. port of entry, where immigration officials detained him pursuant to 8 U.S.C. §1225(b)(1). ECF No. 15-141 at 12-17. After Petitioner expressed a credible fear of return to his native India, he was placed in removal proceedings, where he applied for asylum. Id. at 12-24; ECF No. 15-2. He has remained detained throughout removal proceedings. Petitioner made two requests for bond redetermination before an

immigration judge (IJ), both of which were denied upon a finding that the IJ did not have jurisdiction to consider bond for a noncitizen detained under §1225(b)(1). ECF No. 15-4; 15-5; 15-8; 15-9. The Board of Immigration Appeals (BIA) dismissed Petitioner's appeal of the first bond denial; the second appeal is pending. ECF No. 15-6; 15-10. On January 23, 2026, an IJ denied Petitioner's applications for asylum and related relief and ordered him removed from the United States. ECF No. 15-11. Petitioner appealed the removal order to the Board of Immigration Appeals (BIA). ECF No. 15-12. The appeal remains pending. Id.

On February 12, 2026, while detained at the Otay Mesa detention facility, Petitioner filed an application for writ of habeas corpus with the Southern District of California, arguing that prolonged detention without a bond hearing violated his Fifth Amendment right to due process. Sarna v. LaRose, et al., No. 3:26-cv-00921-TWR-MSB (S.D. Cal.) ("Sarna I); see also ECF No. 15-13. District Judge Todd W. Robinson granted the petition and ordered Respondent to provide Petitioner with an individualized bond hearing within 14 days of the order. Id.; see also ECF No. 15-15.

Pursuant to the federal court's order, Immigration Judge Catherine Halliday-Roberts conducted a bond hearing in March 2026. ECF No. 16, 17. Because the district judge's order did not provide direction regarding burden of proof, the IJ concluded that Petitioner bore the burden to demonstrate that he does not pose a danger or risk of flight. Id. See also ECF No. 15-20 at 3. The attorney representing the government conceded that Petitioner has no criminal history, has an established address in the United States, and has gone through the proper legal channels to seek asylum. ECF No. 16. See also ECF No. 15-20 at 11. The government's attorney also represented that they "did not see anything that would mandate any further detention," and would request alternatives to detention "at DHS discretion" but that they had "been instructed to reserve appeals on bond grants." Id. The IJ nonetheless denied bond, finding that Petitioner "poses an extreme risk of flight such that no bond should be set given the procedural posture of his case, his manner of entry, recency of entry, and limited family ties to the United States." ECF No. 18-3, 18-4. Petitioner appealed the IJ's bond denial to the BIA, which summarily dismissed the appeal after Petitioner failed to file a brief. ECF No. 18-5.

Petitioner subsequently filed two more habeas petitions before the Southern District of California, challenging the neutrality of the bond hearing and again raising due process claims regarding prolonged detention. Sarna v. LaRose, No. 3:26-cv-01972-TWR-MSB (S.D. Cal.) ("Sarna II"); Sarna v. LaRose, No. 3:26-cv-02748-TWR-VET (S.D. Cal.) ("Sarna III"). The district judge denied both petitions for failure to exhaust administrative remedies, as the appeal of the bond denial was at that time still pending before the BIA. Id. See also 15-18 at 3; 15-23 at 3.

On June 12, 2026, after ICE transferred Petitioner from the Otay Mesa detention facility to the California City detention facility (CCDF), Petitioner filed the instant petition for writ of habeas corpus in this judicial district. ECF No. 1; ECF No. 15 at 3. This petition claims that detention has become indefinite, as removal is not likely in the reasonably foreseeable future, that due process requires he be given an opportunity to show that he should not be detained, and that continued detention also violates his rights under the Eighth Amendment and the Immigration and Nationality Act (INA). ECF No. 1. Petitioner's declaration in support of the petition described "prison-like conditions" which have caused a decline in his physical and mental health. Id. at 9-10. The undersigned appointed counsel and directed the parties to brief whether Petitioner's detention violates his substantive due process rights. ECF No. 5. Petitioner's amended petition through counsel seeks Petitioner's immediate release because the government has not shown his detention serves a legitimate purpose. ECF No. 15 at 20. Respondent replied that the petition should be dismissed for abuse of the writ and that due process does not require a bond hearing. ECF No. 18.

## II. Abuse of Writ Doctrine

The abuse of the writ doctrine "forbids the reconsideration of claims that were or could have been raised in a prior habeas petition." Petrocelli v. Angelone, 248 F.3d 877, 884 (9th Cir. 2001). The doctrine may apply to successive habeas petitions challenging immigration detention. Alaimalo v. United States, 645 F.3d 1042, 1049 (9th Cir. 2011). A successive petition that raises identical grounds for relief as a prior petition must be dismissed unless the petitioner can show cause for bringing a successive petition and that prejudice would result, or that a fundamental miscarriage of justice would result from failure to entertain the claim. Id. Here, the successive

petition does not raise identical grounds for relief as the prior petitions. The instant petition raises claims under the Eighth Amendment and the INA, which were not raised in any of the prior petitions. Moreover, the district judge dismissed Sarna II and Sarna III without prejudice upon a finding that Petitioner had not yet exhausted his administrative remedies. The BIA has since dismissed Petitioner's appeal of the March 2026 bond hearing (ECF No. 19-5), making this matter now ripe for review.

**III. Statutory Immigration Framework**

A non-citizen arrested at or near the border without valid entry documents is normally ordered removed "without further hearing or review" pursuant to an expedited removal process. See 8 U.S.C. § 1225(b)(1)(A)(i). But if such non-citizen "indicates either an intention to apply for asylum ... or a fear of persecution," then that non-citizen is referred for an asylum interview. See 8 U.S.C. § 1225(b)(1)(A)(ii). While awaiting this credible fear interview, the non-citizen is to remain detained. See 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). If an immigration officer determines after that interview that the non-citizen has a credible fear of persecution, "the [non-citizen] shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). At that point, the asylum applicant will receive full consideration of the asylum claim in a standard removal hearing. The parties do not dispute that 8 U.S.C. § 1225(b)(1)(B)(ii) governs Petitioner's detention.

**IV. Due Process Analysis**

The Due Process Clause "protects individuals against two types of government action: violations of substantive due process and procedural due process." United States v. Quintero, 995 F.3d 1044, 1051 (9th Cir. 2021) (internal quotation omitted). Judge Robinson of the Southern District of California previously found that Petitioner's prolonged detention violated his right to procedural due process and thus ordered an individualized hearing to remedy the violation. Sarna I at ECF No. 6. Despite Respondents' purported compliance with this Court's order,[1] Petitioner's

[1] In the interest of judicial economy, because the undersigned is recommending release on substantive due process grounds, the Court need not fully address Petitioner's claims regarding the adequacy or neutrality of the court-ordered bond hearing.

ongoing detention now raises substantive due process concerns, as it has become excessive in relation to its regulatory purpose.

As a matter of substantive due process, governmental action may only infringe a fundamental right if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993). "At the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." Jackson v. Indiana, 406 U.S. 715, 738 (1972). In the context of pretrial detention, the Ninth Circuit has held that "[a] [substantive] due process violation occurs when detention becomes punitive rather than regulatory, meaning there is no regulatory purpose that can rationally be assigned to the detention or the detention appears excessive in relation to its regulatory purpose." United States v. Torres, 995 F.3d 695, 708 (9th Cir. 2021) (citing United States v. Salerno, 481 U.S. 739, 747 (1987)). In the immigration context, "[d]ue process protects against immigration detention that is not reasonably related to the legitimate purpose of effectuating removal or protecting against danger and flight risk." Padilla v. U.S. Imm. and Customs Enforcement, 704 F. Supp. 3d 1163, 1171-72 (W.D. Wash. 2023) (citing Zadvydas v. Davis, 533 U.S. 678, 690-91 (2001)); see also Larios v. Wofford, No. 1:26- cv-1498 DJC CKD, 2026 WL 765019, at *5 (E.D. Cal. Mar. 18, 2026) (recognizing availability of substantive due process claims in the context of immigration detention).

The undersigned applies the following five-factor balancing test developed by Judge Pitts of the Northern District of California to evaluate whether a particular individual's ongoing immigration detention violates substantive due process: (1) the length of detention and whether it is excessive in relation to its regulatory purpose; (2) the government's contribution to any delay; (3) the evidence supporting the determination that detention is warranted to prevent flight risk or community danger; (4) whether the government interests in ensuring appearance at future proceedings and protecting the community could be protected through alternatives to detention that are less harsh; and (5) the conditions of detention and how they compare to conditions under which pretrial criminal detainees or people convicted of crimes are held. See Doe v. Becerra, 732 F. Supp. 3d 1071, 1080 (N.D. Cal. 2024) ("Doe v. Becerra II"). Applying these Doe v. Becerra II

factors, the undersigned concludes that Petitioner's current detention violates substantive due process.

**A. Length of Detention**

"[A]t some point, [civil] detention can 'become excessively prolonged, and therefore punitive,' resulting in a due process violation." Torres, 995 F.3d at 708 (quoting Salerno, 481 U.S. at 747 n.4). "But while the existence of some threshold of per se due process violation may be 'undisputed,' . . . it has also never been clearly delineated in the context of immigration detention." Doe v. Becerra, 704 F. Supp. 3d 1006, 1020 (N.D. Cal. 2023) ("Doe v. Beccera I"). The Supreme Court deemed six months the presumptive limit of reasonable detention under § 1231(a)(6). Zadvydas v. Davis, 533 U.S. 678 (2001). In Demore v. Kim, 538 U.S. 510 (2003), the Supreme Court upheld the facial constitutionality of mandatory detention under § 1226(c), but with the understanding that § 1226(c) detention is relatively "brief" and "limited," and "lasts roughly a month and a half in the vast majority of cases" and "about five months in the minority of cases in which the [noncitizen] chooses to appeal." Id. at 513, 529 n.12, 530. Conversely, in Jennings v. Rodriguez, 538 U.S. 281 (2018), the Supreme Court found no implicit six-month limit on length of detention under § 1225(b).

To determine whether detention has violated substantive due process rights, courts in this and other districts have analogized immigration detention to pre-trial detention in formulating a test to weigh the length of detention against its regulatory purpose:

> Ultimately, though, whether this prolonged detention is *excessive* and therefore punitive is a relative question. The duration of detention itself must be weighed against . . . the regulatory purposes for detention—preventing flight risk and protecting public safety. Whether the duration of detention is excessive depends in part on the degree of those risks and the extent to which [the petitioner's] detention mitigates them.

Doe v. Becerra II, 732 F. Supp. 3d at 1083 (emphasis in original); see also Torres, 995 F.3d at 708 ("The point at which detention constitutes a due process violation requires a case-by-case analysis.").

Petitioner's detention has lasted 16 months, which is undoubtedly prolonged. See Chen v. Aitken, 917 F. Supp. 2d 1013, 1018 (N.D. Cal. 2013) (holding Petitioner's seven-month detention under § 1225(b) was "prolonged" because it "has lasted well beyond the typical period described in Demore" and "neither release nor removal are imminent"). The pending appeal to the BIA suggests that Petitioner "faces an undetermined, but likely significant, period of mandatory detention through the appeals process." Gao v. LaRose, 805 F. Supp. 3d 1106, 1111 (S.D. Cal. 2025). But while prolonged, the current 16-month duration of Petitioner's detention, standing alone, may not violate substantive due process. See Torres, 995 F.3d at 699 (identifying the 21-months of pre-trial detention as "likely approaching the outer bounds of due process"). However, Petitioner has offered evidence that this duration is excessive in relation to its regulatory purpose, in that Petitioner is not a danger to the community, any flight risk he poses can be mitigated by alternatives to detention, and the conditions of confinement are no less restrictive than that of criminal incarceration.

**B. Government Contribution to Delay**

Relevant to this analysis is the parties' responsibility for "delays that have contributed to the duration of detention." Doe v. Becerra II, 732 F. Supp. 3d at 1083; see also United States v. Gelfuso, 838 F.2d 358, 359 (9th Cir. 1988) (the due process limit on the length of pretrial detention requires consideration of "the length of confinement in conjunction with the extent to which the prosecution bears responsibility for the delay that has ensued"). The undersigned attributes the period of detention between March 18, 2026 and the present to delays caused by the government. At the March 2026 court-ordered bond hearing, the IJ refused to grant bond or release on any terms even when the parties agreed that detention was no longer justified. The IJ discredited DHS's position that it "did not see anything that would mandate any further detention," and ignored its request for alternatives to detention to be set at DHS's discretion. The IJ overrode both parties' positions, which were not in conflict, when the DHS attorney indicated that the agency had instructed its attorneys to reserve appeal of all bond grants.[2] The IJ's

[2] The DHS attorney did not indicate that the agency would indeed appeal, but rather that it would reserve its right to do so.

unilateral decision not to release a person who DHS did not believe should be detained unnecessarily prolonged Petitioner's detention.

### C. Evidence of Flight Risk and Danger

Determining whether Petitioner's prolonged detention has become excessive in relation to its purpose requires consideration of the extent to which it serves its regulatory purposes of preventing flight and danger to the community. "This inquiry requires evaluating the degree to which [Petitioner] poses a flight risk or danger, which in turn requires the Court to consider the evidence related to those risks." Doe v. Becerra II, 732 F. Supp. 3d at 1086. Nothing in the record suggests – and neither the IJ nor the government's attorney asserted – that Petitioner poses a danger to the community. This factor will therefore turn on the evidence related to whether Petitioner poses a flight risk.

Though not bound by them, the undersigned finds the factors set forth in Matter of Guerra, 24 I.&N. Dec. 37, 40-41 (BIA 2006) (listing the factors an IJ may consider in determining whether a noncitizen merits release from custody) instructive. The factors relating to risk of flight include: whether the noncitizen has a fixed address in the United States; length of residence in the United States; family ties to the United States and whether they may entitle the noncitizen to reside permanently in the United States in the future; employment history; record of appearance in court; history of immigration violations; any attempts to flee prosecution or otherwise escape from authorities; and the manner of entry to the United States. Id.

These factors weigh neither strongly in favor nor strongly against a finding of flight risk. Petitioner entered the U.S. without authorization but followed all necessary and available procedures to apply for asylum. ECF No. 15-20 at 12, 13. He provided a fixed intended address in the United States, but the proposed sponsor with whom he would live is not a close relative, and Petitioner has not lived or worked in the United States prior to his detention. Id. at 10, 12. Petitioner's documented fear of return to India does provide a motive to abscond should Petitioner's removal order become final. The undersigned therefore finds that Petitioner does pose some potential risk of flight, but also considers DHS's position at the bond hearing that this minimal risk does not justify ongoing detention, and that it can be mitigated by less restrictive

alternatives to detention. See ECF No. 15-20 at 11-13.

**D. Alternatives to Detention**

Relevant to assessing dangerousness and flight risk is whether the government's interests in protecting the community and ensuring appearances for immigration proceedings could be protected through alternatives to detention that are less restrictive. Doe v. Becerra II, 732 F. Supp 3d at 1080.

To the extent Petitioner poses a flight risk, there are routine and obvious conditions that ICE could – and has expressed willingness to – impose, including check-ins with ICE officials and electronic monitoring. See ECF No. 15-20 at 11 ("we will ask for ATD at DHS discretion"). ICE's Intensive Supervision Appearance Program (ISAP) offers alternatives to detention such as GPS tracking, a smartphone app, and reporting by telephone. See Doe v. Chestnut, 810 F. Supp. 3d at 1198, citing ICE, Alternatives to Detention, perma.cc/384H-HCLY. These alternatives to detention are specifically designed to mitigate flight, and ICE's own data shows that the vast majority of participants comply with the programs' requirements. Id. The availability of these alternatives to detention greatly reduces the government's interest in detention for the purported purpose of mitigating flight risk – a risk that DHS has indicated is minimal. See ECF No. 15-20 at 11-13.

**E. Conditions of Detention**

Substantive due process also imposes outer bounds on the conditions of civil immigration detention. Doe v. Becerra II, 732 F. Supp. 3d at 1080; Jones v. Blanas, 393 F.3d 918, 932 (9th Cir. 2004) ("[W]hen a [civil] detainee is confined in conditions identical to, similar to, or more restrictive than, those in which his criminal counterparts are held, we presume that the detainee is being subjected to 'punishment.'"). Petitioner's allegations of restrictive conditions at the California City detention facility (hereinafter "CCDF") – which Respondent does not refute – comport with other courts' findings that conditions at CCDF are "not only inherently harsh but also worse than the conditions […] in state prison. Doe v. Chestnut, 810 F. Supp. 3d at 1201 (citing Doe v. Beccera II, 732 F. Supp. 3d at 1089).

Petitioner alleges that access to medical care at CCDF is severely delayed, even for urgent

health concerns. ECF No. 1 at 10. In a class action against ICE alleging that conditions of confinement at CCDF violated noncitizen detainees' First and Fifth Amendment rights, Judge Chesney of the Northern District of California found that the facility "struggle[s] to deliver standard of care for common uncomplicated problems," let alone for "patients with complex medical care needs" and that "it is not safe to be sick" at CCDF. Gomez Ruiz v. U.S. Immigration and Customs Enforcement, 3:25-cv-09757-MMC, 2026 WL 851980, at *3 (N.D. Cal. March 27, 2026). Consistent with Petitioner's claim that CCDF delays requests for medical care, the intake process at CCDF was found to be "incomplete" and "haphazard." Id. Patients "are not seen within a reasonable time" and sick calls "describing urgent medical symptoms can go unaddressed or unacknowledged for days or weeks." Id. An expert investigation "revealed multiple instances of 'poor clinical judgment,' inadequate recordkeeping, and treatment that failed to comport with the prevailing standard of care." Id. See also Tigranyan v. Warden of California City Det., No. 1:25-CV-01554-DJC-SCR, 2026 WL 91765, at *6 (E.D. Cal. Jan. 13, 2026) (noting investigation and report by Disability Rights California finding that CCDF fails to provide necessary medical and mental health care and fails to other meet basic needs), report and recommendation adopted, No. 1:25-CV-01554-DJC-SCR, 2026 WL 130843 (E.D. Cal. Jan. 16, 2026).

Petitioner's allegations of limited access to basic facilities and being locked in a cell for at least 11 hours per day (ECF No. 1 at 10) also align with the findings of other courts. Detainees at CCDF are given at most one hour per day of outdoor recreation time, which is "less than prisoners in segregation are offered." Gomez Ruiz, 2026 WL 851980, at *5. Daily counts and insufficient staffing at CCDF make it impracticable for attorneys to visit detainees as often as they typically would, and the no-contact nature of the visits "constitute[e] restrictive conditions under which attorneys have difficulty hearing and speaking to their clients." Gomez Ruiz, 2026 WL 851980, at *5.

Additionally, conditions at CCDF have been described as "abysmal," with "frigid" temperatures and water that "tast[ed] like bleach or detergent." Kaur v. United States Dep't of Homeland Sec., 813 F. Supp. 3d 1167, 1172 (E.D. Cal. 2025). While prisons routinely provide

sweatshirts and sweatpants to inmates free of charge, CCDF does not do so for their immigrant detainees. Gomez Ruiz, 2026 WL 851980, at *8. The undersigned agrees that conditions at CCDF "are both excessive in relation to any non-punitive purpose and employed to achieve objectives that could be achieved by other, less harsh methods." Id.

**F. Conclusion as to Substantive Due Process Analysis**

On balance, the undersigned finds that Petitioner has established that his detention is excessive in relation to its regulatory purpose**.** Petitioner has spent months confined in conditions found to be more restrictive than criminal confinement, despite the availability of post-release monitoring that DHS has already acknowledged could mitigate any risk of flight Petitioner presents. Accordingly, the undersigned finds that Petitioner's detention has become punitive and recommends that the amended petition be granted.

## V. Remedy

The undersigned next turns to the appropriate remedy:

> Federal habeas corpus practice, as reflected by the decisions of [the Supreme] Court, indicates that a court has broad discretion in conditioning a judgment granting habeas relief. Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters 'as law and justice require.'" Hilton v. Braunskill, 481 U.S. 770, 775 [] (1987). "[H]abeas corpus is, at its core, an equitable remedy." Schlup v. Delo, 513 U.S. 298, 319[] (1995). "Moreover, in constitutional adjudication as elsewhere, equitable remedies are a special blend of what is necessary, what is fair, and what is workable." Lemon v. Kurtzman, 411 U.S. 192, 200 [] (1973) (footnote omitted).

Doe v. Chestnut, 810 F. Supp. 3d at 1202. The undersigned finds that appropriate remedy for this violation of substantive due process is release, but with safeguards to mitigate flight risk. See id. (ordering release with "appropriate conditions so that the government's significant interests in ensuring Petitioner's appearance at future proceedings, protecting the community, and that, if ordered removed, Petitioner will be successfully removed, are protected."); Zadvydas, 533 U.S. at 700 ("[T]he [noncitizen]'s release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt be returned to custody upon a violation of those conditions.").

////

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's petition for writ of habeas corpus be GRANTED as follows:
    a. Respondent shall IMMEDIATELY RELEASE Petitioner Aniket Sarna (A# 221-417-225) from custody. At the time of release, Respondent must return all of Petitioner's documents and possessions;
    b. Upon Petitioner's release, Respondent shall enroll Petitioner in ICE's Intensive Supervision Appearance Program (ISAP) and impose its standard flight-mitigation conditions.
2. The Clerk be directed to:
    a. Serve the California City Immigration Processing Center with a copy of this Order; and
    b. Enter judgment in Petitioner's favor and close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 14, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE