UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANIKET SARNA (A# 221-417-225),<br>Petitioner,<br>v.<br>CHESTNUT,<br>Respondent. | No. 1:26-cv-04535-DC-SCR<br><br>ORDER & AMENDED FINDINGS & RECOMMENDATIONS |

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. This matter is referred to the undersigned by operation of Local Rule 302 and 28 U.S.C. § 636(b)(1). This is Petitioner's fourth habeas corpus petition, but the first in this judicial district.

On September 14, 2026, the undersigned issued Findings and Recommendations finding that Petitioner's ongoing detention violates substantive due process and recommending his release. ECF No. 22. Respondent filed objections (ECF No. 24) and the undersigned granted Petitioner's request to file a reply to those objections (ECF Nos. 26-28). Respondent's objections and Petitioner's reply raise important questions about the application of the Due Process Clause to an individual like Petitioner who has remained in detention continuously after being arrested by immigration authorities at the border. The undersigned accordingly vacates the prior Findings

and Recommendations and issues these Amended Findings and Recommendations, finding that despite Petitioner's arrest at the border, he is protected by substantive due process against detention that is excessive in relation to its purposes. The undersigned also finds that Petitioner's ongoing detention violates substantive due process and recommends that he be released.

**I. Factual and Procedural History**

On May 13, 2025, Petitioner arrived at a U.S. port of entry, where immigration officials detained him pursuant to 8 U.S.C. §1225(b)(1). ECF No. 15-141 at 12-17. After Petitioner expressed a credible fear of return to his native India, he was placed in removal proceedings, where he applied for asylum. Id. at 12-24; ECF No. 15-2. He has remained detained throughout removal proceedings. Petitioner made two requests for bond redetermination before an immigration judge (IJ), both of which were denied upon a finding that the IJ did not have jurisdiction to consider bond for a noncitizen detained under §1225(b)(1). ECF No. 15-4; 15-5; 15-8; 15-9. The Board of Immigration Appeals (BIA) dismissed Petitioner's appeal of the first bond denial; the second appeal is pending. ECF No. 15-6; 15-10. On January 23, 2026, an IJ denied Petitioner's applications for asylum and related relief and ordered him removed from the United States. ECF No. 15-11. Petitioner appealed the removal order to the Board of Immigration Appeals (BIA). ECF No. 15-12. The appeal remains pending. Id.

On February 12, 2026, while detained at the Otay Mesa detention facility, Petitioner filed an application for writ of habeas corpus with the Southern District of California, arguing that prolonged detention without a bond hearing violated his Fifth Amendment right to due process. Sarna v. LaRose, et al., No. 3:26-cv-00921-TWR-MSB (S.D. Cal.) ("Sarna I); see also ECF No. 15-13. District Judge Todd W. Robinson granted the petition and ordered Respondent to provide Petitioner with an individualized bond hearing within 14 days of the order. Id.; see also ECF No. 15-15.

Pursuant to the federal court's order, Immigration Judge Catherine Halliday-Roberts conducted a bond hearing in March 2026. ECF No. 16, 17. Because the district judge's order did not provide direction regarding burden of proof, the IJ concluded that Petitioner bore the burden to demonstrate that he does not pose a danger or risk of flight. Id. See also ECF No. 15-20 at 3.

The attorney representing the government conceded that Petitioner has no criminal history, has an established address in the United States, and has gone through the proper legal channels to seek asylum. ECF No. 16. See also ECF No. 15-20 at 11. The government's attorney also represented that they "did not see anything that would mandate any further detention," and would request alternatives to detention "at DHS discretion" but that they had "been instructed to reserve appeals on bond grants." Id. The IJ nonetheless denied bond, finding that Petitioner "poses an extreme risk of flight such that no bond should be set given the procedural posture of his case, his manner of entry, recency of entry, and limited family ties to the United States." ECF No. 18-3, 18-4. Petitioner appealed the IJ's bond denial to the BIA, which summarily dismissed the appeal after Petitioner failed to file a brief. ECF No. 18-5.

Petitioner subsequently filed two more habeas petitions before the Southern District of California, challenging the neutrality of the bond hearing and again raising due process claims regarding prolonged detention. Sarna v. LaRose, No. 3:26-cv-01972-TWR-MSB (S.D. Cal.) ("Sarna II"); Sarna v. LaRose, No. 3:26-cv-02748-TWR-VET (S.D. Cal.) ("Sarna III"). The district judge denied both petitions for failure to exhaust administrative remedies, as the appeal of the bond denial was at that time still pending before the BIA. Id. See also 15-18 at 3; 15-23 at 3.

On June 12, 2026, after ICE transferred Petitioner from the Otay Mesa detention facility to the California City detention facility (CCDF), Petitioner filed the instant petition for writ of habeas corpus in this judicial district. ECF No. 1; ECF No. 15 at 3. This petition claims that detention has become indefinite, as removal is not likely in the reasonably foreseeable future, that due process requires he be given an opportunity to show that he should not be detained, and that continued detention also violates his rights under the Eighth Amendment and the Immigration and Nationality Act (INA). ECF No. 1. Petitioner's declaration in support of the petition described "prison-like conditions" which have caused a decline in his physical and mental health. Id. at 9-10. The undersigned appointed counsel and directed the parties to brief whether Petitioner's detention violates his substantive due process rights. ECF No. 5. Petitioner's amended petition through counsel seeks Petitioner's immediate release because the government has not shown his detention serves a legitimate purpose. ECF No. 15 at 20. Respondent replied that the petition

should be dismissed for abuse of the writ and that due process does not require a bond hearing. ECF No. 18.

**II. Abuse of Writ Doctrine**

The abuse of the writ doctrine "forbids the reconsideration of claims that were or could have been raised in a prior habeas petition." Petrocelli v. Angelone, 248 F.3d 877, 884 (9th Cir. 2001). The doctrine may apply to successive habeas petitions challenging immigration detention. Alaimalo v. United States, 645 F.3d 1042, 1049 (9th Cir. 2011). A successive petition that raises identical grounds for relief as a prior petition must be dismissed unless the petitioner can show cause for bringing a successive petition and that prejudice would result, or that a fundamental miscarriage of justice would result from failure to entertain the claim. Id. Here, the successive petition does not raise identical grounds for relief as the prior petitions. The instant petition raises claims under the Eighth Amendment and the INA, which were not raised in any of the prior petitions. Moreover, the district judge dismissed Sarna II and Sarna III without prejudice upon a finding that Petitioner had not yet exhausted his administrative remedies. The BIA has since dismissed Petitioner's appeal of the March 2026 bond hearing (ECF No. 19-5), making this matter now ripe for review.

**III. Statutory Immigration Framework**

A non-citizen arrested at or near the border without valid entry documents is normally ordered removed "without further hearing or review" pursuant to an expedited removal process. See 8 U.S.C. § 1225(b)(1)(A)(i). But if such non-citizen "indicates either an intention to apply for asylum ... or a fear of persecution," then that non-citizen is referred for an asylum interview. See 8 U.S.C. § 1225(b)(1)(A)(ii). While awaiting this credible fear interview, the non-citizen is to remain detained. See 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). If an immigration officer determines after that interview that the non-citizen has a credible fear of persecution, "the [non-citizen] shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). At that point, the asylum applicant will receive full consideration of the asylum claim in a standard removal hearing. The parties do not dispute that 8 U.S.C. § 1225(b)(1)(B)(ii) governs Petitioner's detention.

## IV. Due Process Analysis

### A. Substantive Due Process Protections Apply to Petitioner Despite Petitioner's Arrest at the U.S.-Mexico Border

The Due Process Clause "protects individuals against two types of government action: violations of substantive due process and procedural due process." United States v. Quintero, 995 F.3d 1044, 1051 (9th Cir. 2021) (internal quotation omitted). Judge Robinson of the Southern District of California previously found that Petitioner's prolonged detention violated his right to procedural due process and thus ordered an individualized hearing to remedy the violation. Sarna I at ECF No. 6. Despite Respondents' purported compliance with this Court's order,[1] Petitioner's ongoing detention now raises substantive due process concerns, as it has become excessive in relation to its regulatory purpose.

As a matter of substantive due process, governmental action may only infringe a fundamental right if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993). "At the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." Jackson v. Indiana, 406 U.S. 715, 738 (1972). In the context of pretrial detention, the Ninth Circuit has held that "[a] [substantive] due process violation occurs when detention becomes punitive rather than regulatory, meaning there is no regulatory purpose that can rationally be assigned to the detention or the detention appears excessive in relation to its regulatory purpose." United States v. Torres, 995 F.3d 695, 708 (9th Cir. 2021) (citing United States v. Salerno, 481 U.S. 739, 747 (1987)). In the immigration context, "[d]ue process protects against immigration detention that is not reasonably related to the legitimate purpose of effectuating removal or protecting against danger and flight risk." Padilla v. U.S. Imm. and Customs Enforcement, 704 F. Supp. 3d 1163, 1171-72 (W.D. Wash. 2023) (citing Zadvydas v. Davis, 533 U.S. 678, 690-91 (2001)); see also Larios v. Wofford, No. 1:26- cv-1498 DJC CKD, 2026 WL 765019, at *5 (E.D. Cal. Mar. 18, 2026) (recognizing availability of substantive due

[1] In the interest of judicial economy, because the undersigned is recommending release on substantive due process grounds, the Court need not fully address Petitioner's claims regarding the adequacy or neutrality of the court-ordered bond hearing.

process claims in the context of immigration detention).

Respondent contends that the substantive due process framework applied in the original Findings and Recommendations and applied again below is precluded by Supreme Court precedent, in particular Dep't of Homeland Security v. Thuraissigiam, 591 U.S. 103 (2020), and Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206 (1953). As Respondent notes, in Thuraissigiam the Supreme Court "invokes a 'century of precedent' to highlight certain 'fundamental propositions' including that the 'power to admit or exclude aliens is a sovereign prerogative,' the Constitution gives the political department of the government plenary authority to decide which aliens to admit, and 'the power to set the procedures to be followed in determining whether an alien should be admitted.'" ECF No. 24 at 3 (quoting Thuraissigiam, 591 U.S. at 139 (internal citations and quotations omitted)). As Respondent also notes, in Mezei the Supreme Court upheld the two-year-long detention of a non-citizen arrested at the border, finding, "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." ECF No. 24 at 3 (quoting Mezei, 345 U.S. at 212 (internal quotation marks omitted)). Because "[p]etitioner is detained pursuant to a statutory mandate, and the Supreme Court's holding that due process is coextensive with statute is binding on this Court," Respondent contends that due process has nothing else to say about his detention. ECF No. 24 at 3-4.

The undersigned begins by briefly defining the scope of the issue. Respondent's authority and the other cases discussed below involve the "entry fiction doctrine," under which "aliens seeking admission into the United States may physically be allowed within its borders pending a determination of admissibility, [but] such aliens are legally considered to be detained at the border and hence as never having effected entry into this country." Padilla v. U.S. Immigration and Customs Enforcement, -- F.4th --, 2026 WL 2822044, at *12 (9th Cir. Sept. 21, 2026) (quotation omitted). "Today, the entry fiction encompasses those apprehended at or very near a point of entry and then either paroled into the United States or"—like Petitioner in the instant case—"detained in the United States pending a determination of their admissibility. Such individuals are 'treated as if stopped at the border' with respect to certain legal rights." Id. (quoting Mezei, 345 U.S. at 215).

As explained below, Ninth Circuit precedent establishes that non-citizens arrested at the border or its functional equivalent have substantive due process rights in relation to their civil immigration detention. This precedent is not in meaningful tension with Thuraissigiam, which, as explained below, concerns the question of procedural due process rights as to applications for immigration relief, or with Mezei, which concerned procedural rights in a unique national security context and did not analyze the question whether a detention has become substantively unreasonable.

In Wong v. United States, 373 F.3d 952 (9th Cir. 2004), the Ninth Circuit recognized that the "entry fiction" doctrine limits extra-statutory procedural due process rights—particularly concerning admission to the United States—but does not affect other due process claims concerning detention.[2] After returning from a trip abroad, Wong was briefly paroled into the United States before being arrested and detained by immigration authorities. Wong alleged various forms of mistreatment during her civil immigration detention, including an equal protection claim under the Fifth Amendment's Due Process Clause. The immigration officials who Wong sued argued, inter alia, that as a non-citizen "lacking entry papers upon her return … a reasonable official would not have known that Wong was entitled to the full panoply of protections offered by the Constitution." 373 F.3d at 970. The Ninth Circuit began by finding that the "entry fiction" appears "determinative of the procedural rights of aliens with respect to their applications for admission." Id. at 971; see also id. at 973 ("The entry fiction is best seen, instead, as a fairly narrow doctrine that primarily determines the procedures that the executive branch must follow before turning an immigrant away. Otherwise, the doctrine would allow any number of abuses to be deemed constitutionally permissible merely by labelling certain 'persons' as non-persons."). However, the entry fiction doctrine "is not necessarily applicable with regard to other constitutional rights."[3] Id. at 972. The Ninth Circuit thus held that the entry fiction did

[2] Wong's analysis as to the availability of a Bivens remedy was abrogated by Wilkie v. Robbins, 551 U.S. 537 (2007).

[3] The Ninth Circuit here favorably cited several out-of-circuit cases affirming the substantive due process rights of non-citizens stopped at the border or otherwise subject to the entry fiction. See

not preclude Wong's detention-related equal protection claim under the Due Process Clause.[4]

The Ninth Circuit recently discussed the entry fiction in Padilla, which concerned the question whether Thuraissigiam precluded non-citizens apprehended after unlawfully entering the United States from seeking bond hearings under procedural due process. While the Ninth Circuit recognized that Thuraissigiam "extended the entry fiction a tiny bit—to an individual apprehended immediately after entry within 25 yards of the border[,]" 2026 WL 2822044, at *13, it did not recognize Thuraissigiam as otherwise expanding the entry fiction doctrine. Rather, Padilla, consistent with Mezei, acknowledged that the entry fiction "limit[s]" the "due process rights regarding admission … to 'whatever the procedure authorized by Congress is[,]'" for non-citizens "'on the threshold of entry.'" Id. (quoting Mezei, 345 U.S. at 212) (emphasis added). But Padilla did not find that the entry fiction limits detention-related claims. Moreover, after an extensive review of historical practice going back to the Magna Carta, Padilla went on to find that "the government's strictly circumscribed detention authority, a pillar of our common law tradition for almost a millennium, stands in contrast to the political branch's 'plenary authority to decide which aliens to admit.'" *Id.* at *19 (quoting Thuraissigiam, 591 U.S. at 139). Padilla thus also held that, "Thuraissigiam was an admission, not a detention, case." *Id.*

---

Lynch v. Cannatella, 810 F.2d 1363 (5th Cir.1987) (holding that the entry fiction "determines the aliens' rights with regard to immigration and deportation proceedings[,]" but "does not limit the right of excludable aliens detained within United States territory to humane treatment"); Ngo v. INS, 192 F.3d 390, 396 (3d Cir.1999) (recognizing that "[e]ven an excludable alien is a 'person' for purposes of the Fifth Amendment and is thus entitled to substantive due process"); Rosales–Garcia v. Holland, 322 F.3d 386, 410 (6th Cir.) (en banc) ("The fact that excludable aliens are entitled to less process ... does not mean that they are not at all protected by the Due Process Clauses of the Fifth and Fourteenth Amendments."), cert. denied, 539 U.S. 941 (2003); see also Sierra v. INS, 258 F.3d 1213, 1218 n. 3 (10th Cir. 2001) (noting that the entry fiction "applies to procedural due process challenges such as Sierra's. This case does not involve, and we do not address, a substantive due process challenge[.]").

[4] Wong also discussed the Ninth Circuit's holding in Barrera-Echavarria v. Rison, 44 F.3d 1441 (9th Cir. 1995) (en banc), that the prolonged detention of excludable Cuban nationals did not violate due process. Wong noted that the detention scheme at issue in Barrera-Echavarria has been "superseded by statute" and involved "a series of one-year periods of detention followed by an opportunity for release[.]" 373 F.3d at 971 n.26 & 972 n.27. As Wong explained, "the Barrera–Echavarria court specifically noted [the] annual review procedures distinguished that case from one involving indefinite detention[.]" Id. at 972 n.28. In Petitioner's case, there are no regular procedures to review his detention. In fact, despite DHS taking the position in his bond hearing that his detention is unnecessary, he remains detained.

As noted above, the Ninth Circuit interprets Mezei (like Thuraissigiam) as primarily involving procedural due process rights to lawful admission. However, as to detention issues, Mezei is best read as limited to its statutory and national security context. As Petitioner argues, Mezei "did not decide the precise legal consequences of a positive credible-fear finding followed by ordinary removal proceedings." ECF No. 28 at 2. Rather, Mezei found that "an exclusion proceeding grounded on danger to the national security … presents different considerations … Ordinarily, to admit an alien barred from entry on security grounds nullifies the very purpose of the exclusion proceeding; Congress in 1950 declined to include such authority in the statute." 345 U.S. at 216. Petitioner's case presents no such national security concerns—to the contrary, DHS has already taken the position that Petitioner can safely be released, subject to conditions.

In sum, precedent does not preclude Petitioner from substantive due process protections against detention that is punitive in effect because it is excessive in relation to its purpose. See Rosales-Garcia, 322 F.3d at 412 ("If excludable [non-citizens] were not protected by even the substantive component of constitutional due process, ... we do not see why the United States government could not torture or summarily execute them. ... [W]e conclude that government treatment of excludable [noncitizens] must implicate the Due Process Clause of the Fifth Amendment."). Indeed, at least one other judge in this district has found a substantive due process violation where detention pursuant to § 1225(b)(1) exceeded its regulatory purpose. See Tigranyan v. Chestnut, No. 1:26-cv-03756-DJC-SCR, 2026 WL 2665968 (E.D. Cal. Sep. 10, 2026), findings and recommendations adopted, 2026 WL 2884290 (E.D. Cal. Sep. 25, 2026) ("Tigranyan II").

**B. Petitioner's Detention is Now Excessive in Relation to Its Purposes, In Violation of Substantive Due Process**

The undersigned applies the following five-factor balancing test developed by Judge Pitts of the Northern District of California to evaluate whether a particular individual's ongoing immigration detention violates substantive due process: (1) the length of detention and whether it is excessive in relation to its regulatory purpose; (2) the government's contribution to any delay; (3) the evidence supporting the determination that detention is warranted to prevent flight risk or

community danger; (4) whether the government interests in ensuring appearance at future proceedings and protecting the community could be protected through alternatives to detention that are less harsh; and (5) the conditions of detention and how they compare to conditions under which pretrial criminal detainees or people convicted of crimes are held. See Doe v. Becerra, 732 F. Supp. 3d 1071, 1080 (N.D. Cal. 2024) ("Doe v. Becerra II"). Applying these Doe v. Becerra II factors, the undersigned concludes that Petitioner's current detention violates substantive due process.

**A. Length of Detention**

"[A]t some point, [civil] detention can 'become excessively prolonged, and therefore punitive,' resulting in a due process violation." Torres, 995 F.3d at 708 (quoting Salerno, 481 U.S. at 747 n.4). "But while the existence of some threshold of per se due process violation may be 'undisputed,' . . . it has also never been clearly delineated in the context of immigration detention." Doe v. Becerra, 704 F. Supp. 3d 1006, 1020 (N.D. Cal. 2023) ("Doe v. Beccera I"). The Supreme Court deemed six months the presumptive limit of reasonable detention under § 1231(a)(6). Zadvydas v. Davis, 533 U.S. 678 (2001). In Demore v. Kim, 538 U.S. 510 (2003), the Supreme Court upheld the facial constitutionality of mandatory detention under § 1226(c), but with the understanding that § 1226(c) detention is relatively "brief" and "limited," and "lasts roughly a month and a half in the vast majority of cases" and "about five months in the minority of cases in which the [noncitizen] chooses to appeal." Id. at 513, 529 n.12, 530. Conversely, in Jennings v. Rodriguez, 538 U.S. 281 (2018), the Supreme Court found no implicit six-month limit on length of detention under the plain text of § 1225(b).[5]

---

[5] Several judges in this Circuit, including a judge in the Southern District of California in Petitioner's earlier habeas action, have considered as-applied challenges to §1225(b)(1) detention and found procedural due process violations where detention has become prolonged. See, e.g., Xu v. Warden, No. 1:26-cv-06270-DC-CSK, 2026 WL 2806842 (E.D. Cal. Sep. 18, 2026); Maksim v. Annex, No. 1:25-cv-00955 SKO, 2025 WL 2879328, at *3-5 (E.D. Cal. Oct. 9, 2025); Mirzada v. Warden, No. 1:26-cv-00425-JLT-FJS, 2026 WL 1864591, at *1-3 (E.D. Cal. June 2, 2026), findings and recommendations adopted, 2026 WL 2030165 (E.D. Cal. Jul. 14, 2026); ) Tigranyan v. Warden, No. 1:25-cv-1554 DJC SCR, 2026 WL 91765, at *4 (E.D. Cal. Jan. 13, 2026), findings and recommendations adopted, 2026 WL 130843 (E.D. Cal. Jan. 16, 2026) ("Tigranyan I"); Khaco v. Warden, No. 1:25-cv-1659-CSK, 2026 WL 295551 (E.D. Cal. Feb. 4, 2026); Cong v. Noem, No. 25-cv-3750-GPC-DEB, 2026 WL 76566, at *4-7 (S.D. Cal. Jan. 9,

To determine whether detention has violated substantive due process rights, courts in this and other districts have analogized immigration detention to pre-trial detention in formulating a test to weigh the length of detention against its regulatory purpose:

> Ultimately, though, whether this prolonged detention is *excessive* and therefore punitive is a relative question. The duration of detention itself must be weighed against . . . the regulatory purposes for detention—preventing flight risk and protecting public safety. Whether the duration of detention is excessive depends in part on the degree of those risks and the extent to which [the petitioner's] detention mitigates them.

Doe v. Becerra II, 732 F. Supp. 3d at 1083 (emphasis in original); see also Torres, 995 F.3d at 708 ("The point at which detention constitutes a due process violation requires a case-by-case analysis.").

Petitioner's detention has lasted 16 months, which is undoubtedly prolonged. See Chen v. Aitken, 917 F. Supp. 2d 1013, 1018 (N.D. Cal. 2013) (holding Petitioner's seven-month detention under § 1225(b) was "prolonged" because it "has lasted well beyond the typical period described in Demore" and "neither release nor removal are imminent"). The pending appeal to the BIA suggests that Petitioner "faces an undetermined, but likely significant, period of mandatory detention through the appeals process." Gao v. LaRose, 805 F. Supp. 3d 1106, 1111 (S.D. Cal. 2025). But while prolonged, the current 16-month duration of Petitioner's detention, standing alone, may not violate substantive due process. See Torres, 995 F.3d at 699 (identifying the 21-months of pre-trial detention as "likely approaching the outer bounds of due process"). However, Petitioner has offered evidence that this duration is excessive in relation to its regulatory purpose, in that Petitioner is not a danger to the community, any flight risk he poses can be mitigated by alternatives to detention, and the conditions of confinement are no less restrictive than that of criminal incarceration.

Respondent contends in its objections to the original Findings and Recommendations that the regulatory purpose of Petitioner's detention is "to permit the Executive to exercise its

---

2026); Temesgen v. Larose, 26-cv-2309-BJC-BJW, 2026 WL 2076158, at *1-2 (S.D. Cal. July 17, 2026); Zinaida v. Lyons, No. 26-cv-2866 PHX RM, 2026 WL 1584699, at *1-2 (D. Ariz. June 3, 2026).

sovereign authority to control who enters the United States." ECF No. 24 at 1. But as noted above, the Ninth Circuit recognizes a distinction between the authority to regulate lawful admission of those arrested at or near the border and the authority to subject that same group to any length or manner of detention. The regulatory purpose of detaining applicants for admission is to mitigate risk of flight and danger to the community while the relevant agencies exercise their authority to determine admission. See Jennings v. Rodriguez, 538 U.S. 281, 286 (2018) ("Detention during those proceedings gives immigration officials time to determine an alien's status without running the risk of the alien's either absconding or engaging in criminal activity before a final decision can be made."). Any order by this Court requiring Petitioner's release from custody does not implicate the sovereign right to exclude and deport Petitioner from the United States after his removal proceedings conclude.

**B. Government Contribution to Delay**

Relevant to this analysis is the parties' responsibility for "delays that have contributed to the duration of detention." Doe v. Becerra II, 732 F. Supp. 3d at 1083; see also United States v. Gelfuso, 838 F.2d 358, 359 (9th Cir. 1988) (the due process limit on the length of pretrial detention requires consideration of "the length of confinement in conjunction with the extent to which the prosecution bears responsibility for the delay that has ensued"). The undersigned attributes the period of detention between March 18, 2026 and the present to delays caused by the government. At the March 2026 court-ordered bond hearing, the IJ refused to grant bond or release on any terms even when the parties agreed that detention was no longer justified. The IJ discredited DHS's position that it "did not see anything that would mandate any further detention," and ignored its request for alternatives to detention to be set at DHS's discretion. The IJ overrode both parties' positions, which were not in conflict, when the DHS attorney indicated that the agency had instructed its attorneys to reserve appeal of all bond grants.[6] The IJ's unilateral decision not to release a person who DHS did not believe should be detained unnecessarily prolonged Petitioner's detention.

---

[6] The DHS attorney did not indicate that the agency would indeed appeal, but rather that it would reserve its right to do so.

### C. Evidence of Flight Risk and Danger

Determining whether Petitioner's prolonged detention has become excessive in relation to its purpose requires consideration of the extent to which it serves its regulatory purposes of preventing flight and danger to the community. "This inquiry requires evaluating the degree to which [Petitioner] poses a flight risk or danger, which in turn requires the Court to consider the evidence related to those risks." Doe v. Becerra II, 732 F. Supp. 3d at 1086. Nothing in the record suggests – and neither the IJ nor the government's attorney asserted – that Petitioner poses a danger to the community. This factor will therefore turn on the evidence related to whether Petitioner poses a flight risk.

Though not bound by them, the undersigned finds the factors set forth in Matter of Guerra, 24 I.&N. Dec. 37, 40-41 (BIA 2006) (listing the factors an IJ may consider in determining whether a noncitizen merits release from custody) instructive. The factors relating to risk of flight include: whether the noncitizen has a fixed address in the United States; length of residence in the United States; family ties to the United States and whether they may entitle the noncitizen to reside permanently in the United States in the future; employment history; record of appearance in court; history of immigration violations; any attempts to flee prosecution or otherwise escape from authorities; and the manner of entry to the United States. Id.

These factors weigh neither strongly in favor nor strongly against a finding of flight risk. Petitioner entered the U.S. without authorization but followed all necessary and available procedures to apply for asylum. ECF No. 15-20 at 12, 13. He provided a fixed intended address in the United States, but the proposed sponsor with whom he would live is not a close relative, and Petitioner has not lived or worked in the United States prior to his detention. Id. at 10, 12. Petitioner's documented fear of return to India does provide a motive to abscond should Petitioner's removal order become final. The undersigned therefore finds that Petitioner does pose some potential risk of flight, but also considers DHS's position at the bond hearing that this minimal risk does not justify ongoing detention, and that it can be mitigated by less restrictive alternatives to detention. See ECF No. 15-20 at 11-13.

////

**D. Alternatives to Detention**

Relevant to assessing dangerousness and flight risk is whether the government's interests in protecting the community and ensuring appearances for immigration proceedings could be protected through alternatives to detention that are less restrictive. Doe v. Becerra II, 732 F. Supp 3d at 1080.

To the extent Petitioner poses a flight risk, there are routine and obvious conditions that ICE could – and has expressed willingness to – impose, including check-ins with ICE officials and electronic monitoring. See ECF No. 15-20 at 11 ("we will ask for ATD at DHS discretion"). ICE's Intensive Supervision Appearance Program (ISAP) offers alternatives to detention such as GPS tracking, a smartphone app, and reporting by telephone. See Doe v. Chestnut, 810 F. Supp. 3d at 1198, citing ICE, Alternatives to Detention, perma.cc/384H-HCLY. These alternatives to detention are specifically designed to mitigate flight, and ICE's own data shows that the vast majority of participants comply with the programs' requirements. Id. The availability of these alternatives to detention greatly reduces the government's interest in detention for the purported purpose of mitigating flight risk – a risk that DHS has indicated is minimal. See ECF No. 15-20 at 11-13.

**E. Conditions of Detention**

Substantive due process also imposes outer bounds on the conditions of civil immigration detention. Doe v. Becerra II, 732 F. Supp. 3d at 1080; Jones v. Blanas, 393 F.3d 918, 932 (9th Cir. 2004) ("[W]hen a [civil] detainee is confined in conditions identical to, similar to, or more restrictive than, those in which his criminal counterparts are held, we presume that the detainee is being subjected to 'punishment.'"). Petitioner's allegations of restrictive conditions at the California City detention facility (hereinafter "CCDF") – which Respondent does not refute – comport with other courts' findings that conditions at CCDF are "not only inherently harsh but also worse than the conditions […] in state prison. Doe v. Chestnut, 810 F. Supp. 3d at 1201 (citing Doe v. Beccera II, 732 F. Supp. 3d at 1089).

Petitioner alleges that access to medical care at CCDF is severely delayed, even for urgent health concerns. ECF No. 1 at 10. In a class action against ICE alleging that conditions of

confinement at CCDF violated noncitizen detainees' First and Fifth Amendment rights, Judge Chesney of the Northern District of California found that the facility "struggle[s] to deliver standard of care for common uncomplicated problems," let alone for "patients with complex medical care needs" and that "it is not safe to be sick" at CCDF. Gomez Ruiz v. U.S. Immigration and Customs Enforcement, 3:25-cv-09757-MMC, 2026 WL 851980, at *3 (N.D. Cal. March 27, 2026). Consistent with Petitioner's claim that CCDF delays requests for medical care, the intake process at CCDF was found to be "incomplete" and "haphazard." Id. Patients "are not seen within a reasonable time" and sick calls "describing urgent medical symptoms can go unaddressed or unacknowledged for days or weeks." Id. An expert investigation "revealed multiple instances of 'poor clinical judgment,' inadequate recordkeeping, and treatment that failed to comport with the prevailing standard of care." Id. See also Tigranyan I, 2026 WL 91765, at *6 (noting investigation and report by Disability Rights California finding that CCDF fails to provide necessary medical and mental health care and fails to other meet basic needs).

Petitioner's allegations of limited access to basic facilities and being locked in a cell for at least 11 hours per day (ECF No. 1 at 10) also align with the findings of other courts. Detainees at CCDF are given at most one hour per day of outdoor recreation time, which is "less than prisoners in segregation are offered." Gomez Ruiz, 2026 WL 851980, at *5. Daily counts and insufficient staffing at CCDF make it impracticable for attorneys to visit detainees as often as they typically would, and the no-contact nature of the visits "constitut[e] restrictive conditions under which attorneys have difficulty hearing and speaking to their clients." Gomez Ruiz, 2026 WL 851980, at *5.

Additionally, conditions at CCDF have been described as "abysmal," with "frigid" temperatures and water that "tast[ed] like bleach or detergent." Kaur v. United States Dep't of Homeland Sec., 813 F. Supp. 3d 1167, 1172 (E.D. Cal. 2025). While prisons routinely provide sweatshirts and sweatpants to inmates free of charge, CCDF does not do so for their immigrant detainees. Gomez Ruiz, 2026 WL 851980, at *8. The undersigned agrees that conditions at CCDF "are both excessive in relation to any non-punitive purpose and employed to achieve objectives that could be achieved by other, less harsh methods." Id.

**F. Conclusion as to Substantive Due Process Analysis**

On balance, the undersigned finds that Petitioner has established that his detention is excessive in relation to its regulatory purpose. Petitioner has spent months confined in conditions found to be more restrictive than criminal confinement, despite the availability of post-release monitoring that DHS has already acknowledged could mitigate any risk of flight Petitioner presents. Accordingly, the undersigned finds that Petitioner's detention has become punitive and recommends that the amended petition be granted.

## V. Remedy

The undersigned next turns to the appropriate remedy:

> Federal habeas corpus practice, as reflected by the decisions of [the Supreme] Court, indicates that a court has broad discretion in conditioning a judgment granting habeas relief. Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters 'as law and justice require.'" Hilton v. Braunskill, 481 U.S. 770, 775 [] (1987). "[H]abeas corpus is, at its core, an equitable remedy." Schlup v. Delo, 513 U.S. 298, 319[] (1995). "Moreover, in constitutional adjudication as elsewhere, equitable remedies are a special blend of what is necessary, what is fair, and what is workable." Lemon v. Kurtzman, 411 U.S. 192, 200 [] (1973) (footnote omitted).

Doe v. Chestnut, 810 F. Supp. 3d at 1202. The undersigned finds that appropriate remedy for this violation of substantive due process is release, but with safeguards to mitigate flight risk. See id. (ordering release with "appropriate conditions so that the government's significant interests in ensuring Petitioner's appearance at future proceedings, protecting the community, and that, if ordered removed, Petitioner will be successfully removed, are protected."); Zadvydas, 533 U.S. at 700 ("[T]he [noncitizen]'s release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt be returned to custody upon a violation of those conditions.").

Accordingly, IT IS HEREBY ORDERED that the Findings and Recommendations filed at ECF No. 22 are VACATED.

Further, IT IS HEREBY RECOMMENDED that:

1. Petitioner's petition for writ of habeas corpus be GRANTED as follows:
    a. Respondent shall IMMEDIATELY RELEASE Petitioner Aniket Sarna (A# 221-

417-225) from custody. At the time of release, Respondent must return all of Petitioner's documents and possessions;

b. Upon Petitioner's release, Respondent shall enroll Petitioner in ICE's Intensive Supervision Appearance Program (ISAP) and impose standard flight-mitigation conditions.

2. The Clerk be directed to:

a. Serve the California City Immigration Processing Center with a copy of this Order; and

b. Enter judgment in Petitioner's favor and close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **three days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue, the fact that Respondent has already been able to formulate objections to the original Findings & Recommendations, and the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 1, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE